RICHARD A. CORBALEY AND SYLVIA CORBALEY ALMAREZ, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Corbaley v. Commissioner
Docket No. 13378-81.
United States Tax Court
T.C. Memo 1984-201; 1984 Tax Ct. Memo LEXIS 474; 47 T.C.M. (CCH) 1570; T.C.M. (RIA) 84201; April 23, 1984. Richard A. Corbaley and Sylvia Corbaley Almarez, pro se.
Florence M. Jones, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $1,289 in petitioners' 1978 Federal income tax. After concessions, the only issue for decision in this case, submitted fully stipulated under Rule 122, [1] is whether petitioners are entitled to a casualty loss deduction under section 165(c)(3) in the amount of $4,345 for damage sustained to an airplane engine which failed while petitioner Richard A. Corbaley was flying the airplane on July 30, 1978. *475 At the time they filed their petition in this case, petitioner Richard A. Corbaley resided in Santee, California, and petitioner Sylvia Corbaley Almarez resided in Corpus Christi, Texas. Petitioners were husband and wife when they timely filed their joint Federal income tax return for 1978, the year at issue; however, they are now divorced. For the sake of simplicity, we shall hereafter refer only to Richard A. Corbaley as petitioner. In April 1978, petitioner purchased a 1946 Stinson 108-1 airplane which contained a Franklin 6A4-150-B3 engine. At the time of purchase, the airplane's engine was a replacement engine, not its original one. Apparently, there exist records which show the age of the replacement engine at the time petitioner purchased the airplane; such records, however, have not been submitted in evidence. Thus, the age of the replacement engine is unknown. Petitioner used the airplane for personal transportation and recreational purposes only. In a letter dated August 20, 1980, addressed to "Audit Officer, Department of Treasury, Internal Revenue Service" and signed by petitioner, petitioner set forth a statement with respect to his claimed 1978 casualty loss *476 which, he stated, "should clarify the events." In relevant part, petitioner stated that on July 28, 1978, at approximately 2:00 p.m., while enroute on a flight from San Diego to Oroville, California, he experienced an airplane engine failure which forced him to land at Hanford Municipal Airport, the nearest airport he could safely reach. After landing the airplane, and upon initial inspection and troubleshooting of the engine, petitioner found that the exhaust valve in the No. 1 cylinder had broken off inside the No. 1 cylinder. Later disassembly and thorough examination of the engine showed extensive internal damage beyond serviceable or overhaul limits. Petitioner further stated that the engine had approximately 500 operating hours since complete major overhaul, approximately 100 operating hours since complete top overhaul, and had been thoroughly inspected and tested by an authorized inspector of the Federal Aviation Administration (FAA) some 3 months and approximately 25 operating hours prior to its failure. In a letter to "Jon" dated April 4, 1983, apparently written to his tax preparer, Jon Nichols, in response to questions posed by respondent's counsel with respect *477 to the casualty loss, petitioner stated that the weather conditions at the time of the engine failure were "clear, daylight, VFR - beautiful day for engine failure!" [2] He described the cause of engine failure and the extent of damage as follows-- #1 cylinder exhaust valve broke off it's [sic] stem inside the cylinder at cruise power. * * * rapid disintigration [sic] of #1 cylinder and piston caused massive metalic [sic] contamination of the oil system which in turn caused extensive wear on all moving parts as well as the engine case. Petitioner further stated that the purchase price of the airplane was $6,200. With respect to the fair market value of the engine before its failure, petitioner stated that he "could only guess"; after the engine failure, petitioner stated: "No one wants a 'blown' engine," thus, the engine had no fair market value. Petitioner stated that he had no insurance to cover the engine. In February 1979, petitioner ultimately purchased, at a price of $3,600, an overhauled replacement engine of *478 unknown age for the airplane. On his 1978 Federal income tax return, petitioner deducted $4,345 as a casualty loss for the loss of his airplane engine. Respondent disallowed the deduction in full. Section 165(c)(3) [3] allows an individual a deduction for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." The issue of whether petitioner is entitled to a deduction for the loss of his airplane engine turns on whether the failure of and the resultant damage sustained to the engine arose from a "casualty" within the meaning of the statute. With respect to this issue, petitioner bears the burden of proving that respondent's disallowance of the casualty deduction was erroneous. ; ; Rule 142(a). *479 After careful consideration of the fully stipulated record, we hold that petitioner has failed to demonstrate that the damage to his airplane engine arose from a casualty, and, therefore, we sustain respondent's determination. The term "casualty" has been defined as-- an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause. , affg. per curiam a Memorandum Opinion of this Court. In , this Court stated that a casualty occurs: wherever unexpected, accidental force is exerted on property and the taxpayer is powerless to prevent application of the force because of the suddenness thereof or some disability, the resulting direct and proximate damage causes a loss which is like or similar to losses arising from the causes specifically enumerated in section 165(c)(3). * * * As stated above, petitioner purchased the airplane in April 1978. At the time of purchase, this 32-year-old airplane contained a replacement engine of unknown age. The flight conditions *480 on the day of engine failure were "clear, daylight, VFR." The engine failure, thus, was not due to adverse weather conditions, i.e., a storm. Instead, the engine failed when an exhaust valve stem broke off in the No. 1 cylinder, causing rapid disintegration of the No. 1 cylinder and piston. This resulted in massive metallic contamination of the oil system and extensive wear on all moving parts and the engine encasement beyond serviceable or overhaul limits, i.e., a "blown engine." The evidence does, not, therefore, demonstrate that the engine failure was due to an accident, a mishap, or a sudden invasion by a hostile agency, or the exertion of an "unexpected, accidental force" similar in nature to a fire, storm, or shipwreck. See , affg. per curiam a Memorandum Opinion of this Court. While the engine's failure was concededly unexpected by petitioner, we think it is more likely, and petitioner has failed to prove otherwise, that the damage was caused by the gradual, progressive deterioration of the exhaust valve stem which finally snapped and destroyed the No. 1 cylinder. The age of the replacement engine, and of *481 the exhaust valve itself, are unknown. Absent a showing by petitioner that the damage was caused by some external force, rather than progressive deterioration of the exhaust valve stem, we conclude that the failure was not the result of a casualty within the meaning of section 165(c)(3). Petitioner, therefore, is not entitled to the claimed casualty deduction. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. VFR - Visual Flight Rule: The weather was sufficiently clear so that the pilot could operate by visual references and without instrumentation.↩
3. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (3) except as provided in subsection (h), losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.↩